Michael S. VIRGIL aka Mike Virgil, Plaintiff,

v.

SPORTS ILLUSTRATED, and Time, Inc., a New York Corporation, Defendants.

Civ. No. 71–179 GT.

United States District Court,
S. D. California,
Fourth Division.

Dec. 17, 1976.

---

**1288**

Gerald R. Schmelzer, San Diego, Cal., for plaintiff.

Leon W. Scales, Scales, Patton, Ellsworth & Corbett, San Diego, Cal., Harold R. Medina, New York City, for defendants.

## OPINION

GORDON THOMPSON, Jr., District Judge.

This opinion culminates round four of a long bout between Mike Virgil and *Sports Illustrated* magazine.[1] In round one this Court prevented a knockout, or perhaps "wipeout" would be more apropos in this context, by denying Time's motion for summary judgment. Round two, Time's interlocutory appeal to the Ninth Circuit, resulted in definition and clarification of the law applicable to invasion of privacy lawsuits and a remand to this Court for reconsideration in light of the new guidance. *See Virgil v. Time, Inc.*, 527 F.2d 1122 (9th Cir. 1975). In round three Time sought review by the Supreme Court but certiorari was denied.

This Court's task in round four is to reconsider Time's motion for summary judgment applying the Restatement (Second) of Torts (Tentative Draft No. 13) standard for newsworthiness adopted by the Ninth Circuit. *Virgil, supra*, at 1129–30. If every reasonable person applying this newly adopted standard would have to conclude that the published facts underlying Virgil's complaint were newsworthy, then the publication of these facts would be privileged under the First Amendment and Time's motion for summary judgment would have to be granted.

In its previous opinion denying summary judgment to Time, this Court recognized that "[i]n some cases it might be possible for a Court to review a publication and the pleadings and to conclude as a matter of law that the subject matter of an article, including references to a particular individual was a matter of public interest [i.e. newsworthy] . . . ." *Virgil v. Sports Illustrated*, Civil No. 71–0179–GT (S.D.Cal. filed Sept. 8, 1972). But relying on case authority of the California Supreme Court—*Kapellos v. Kofman*, 1 Cal.3d 20, 81 Cal.Rptr. 360, 459 P.2d 912, (1969); *Briscoe v. Reader's Digest Assoc., Inc.*, 4 Cal.3d 529, 93 Cal.Rptr. 866, 483 P.2d 34—the Court concluded that this was not a proper case for summary judgment. The Ninth Circuit has now held that the First Amendment privilege to publish newsworthy information "is controlled by federal rather than state law." *Virgil, supra*, at 1129. In addition the Ninth Circuit has now provided a federal standard of newsworthiness for this Court to apply. Therefore, this Court must reconsider its denial of summary judgment to insure that that decision comports with the new federal standard of newsworthiness.

The standard of newsworthiness adopted by the Ninth Circuit is as follows:

In determining what is a matter of legitimate public interest, account must be taken of the customs and conventions of the community; and in the last analysis what is proper becomes a matter of the community mores. The line is to be drawn when the publicity ceases to be the giving of information to which the public is entitled, and becomes a morbid and sensational prying into private lives for its own sake, with which a reasonable member of the public, with decent standards, would say that he had no concern.

*Virgil, supra*, at 1129. The Ninth Circuit pointed out that this is a strict test, but necessarily so—". . . by the extreme limits it imposes in defining the tort it avoids unduly limiting the breathing space

---

1. The article on which plaintiff's complaint is based was published February 22, 1971 and this Court's opinion denying summary judgment was filed September 8, 1972.

needed by the press for the exercise of effective editorial judgment." *Id.* The Court now concludes that Mike Virgil will not be able to satisfy this stricter test and that this is a conclusion on which reasonable minds could not differ. Therefore, Time's motion for summary judgment must be granted.

The facts themselves—putting out cigarettes in his mouth and diving off stairs to impress women, hurting himself in order to collect unemployment so as to have time for bodysurfing at the Wedge during summer, fighting in gang fights as a youngster, and eating insects—are not sufficiently offensive to reach the very high level of offensiveness necessary under *Virgil* to lose newsworthiness protection. The Restatement (Second) standard adopted in *Virgil* uses the terms "morbid and sensational" and the Ninth Circuit endorsed these terms "as illustrative of the degree of offensiveness which should be present." *Virgil, supra,* at 1129 n. 11. The above facts are generally unflattering and perhaps embarrassing, but they are simply not offensive to the degree of morbidity or sensationalism. In fact they connote nearly as strong a positive image as they do a negative one. On the one hand Mr. Virgil can be seen as a juvenile exhibitionist, but on the other hand he also comes across as the tough, aggressive maverick, an archtypal character occupying a respected place in the American consciousness. Given this ambiguity as to whether or not the facts disclosed are offensive at all, no reasonable juror could conclude that they were highly offensive.

The Court's conclusion as to insufficient offensiveness is buttressed by the context in which the facts were placed. Along with the facts complained of *Sports Illustrated* included directly therewith Mr. Virgil's ret-

rospective, more mature, perception and explanation of them. Mr. Virgil was quoted as saying:

> I guess I used to live a pretty reckless life. I think I might have been drunk most of the time. . . . I'm not sure a lot of the things I've done weren't pure lunacy.

Any negative impression a reader might have of Mike Virgil would be tempered considerably by Virgil's own admissions that in hindsight he may have been acting a bit crazily.

Even if the Court had reached the opposite conclusion that the facts disclosed were highly offensive, Time would still be entitled to summary judgment. For highly offensive facts, i. e. those having a degree of offensiveness equivalent to "morbid and sensational", to be denied protection as newsworthy, the revelation of them must be "for its own sake". *Virgil, supra,* at 1129. Both parties agree that body surfing at the Wedge is a matter of legitimate public interest, and it cannot be doubted that Mike Virgil's unique prowess at the same is also of legitimate public interest. Any reasonable person reading the *Sports Illustrated* article would have to conclude that the personal facts concerning Mike Virgil were included as a legitimate journalistic attempt to explain Virgil's extremely daring and dangerous style of body surfing at the Wedge.[2] There is no possibility that a juror could conclude that the personal facts were included for any inherent morbid, sensational, or curiosity appeal they might have.

On page 1131 of its opinion the Ninth Circuit directed this Court to determine not only if the public had a legitimate interest in the private facts respecting Vir-

---

**2.** This is not to say that by engaging in an activity of legitimate public interest, one's entire private life and past history become fair game for news media exploitation. Every person is in large part the sum of their life experiences, and in that sense each and every preceding experience is related to those which come after. But in finding that the facts in this case were revealed in a "legitimate journalistic attempt to explain Mike Virgil's extremely daring and dangerous style of bodysurfing" the Court is concluding that there is a rational and at least arguably close relationship between the facts revealed and the activity to be explained. This opinion should not be read as in any way endorsing no-holes-barred rummaging by the media through the private lives of persons engaged in activities of public interest under the pretense of elucidating that activity or the person's participation in it.

**1290**

gil (which the Court has answered in the affirmative), but also if the "identity of Virgil as the one to whom such facts apply is matter in which the public has a legitimate interest". There seems to have been no compelling reason to use Mike Virgil's true identity in the article, but this would seem to be the case whenever the person involved is not a public figure. "Compelling need", however, is not the test for newsworthiness. The test is whether or not revealing Virgil's identity "cease[d] to be the giving of information to which the public is entitled, and [became] a morbid and sensational prying into private lives for its own sake . . . ." It would be incongruous for this Court to hold that revelation of Virgil's identity presents a jury question under the above test, when it has already determined that under the same test the personal facts themselves were neither highly offensive nor disclosed for their own sake. This is not a case like *Briscoe v. Reader's Digest Assoc., Inc.*, 4 Cal.3d 529, 541–42, 93 Cal.Rptr. 866, 483 P.2d 34, 43 (1971), where there is a serious danger that revelation of the person's identity will lead to stigmatization and possible ostracization.

In conclusion, it is the Court's judgment that disclosure of these private facts and the identity of Mike Virgil are privileged as newsworthy under the First Amendment. Despite the fact that newsworthiness is an issue dependent on the present state of community mores and, therefore, particularly suitable for jury determination, reasonable minds could not differ on this conclusion and Time is entitled to summary judgment.

IT IS SO ORDERED.