ROBERT C. OZER, P.C., d/b/a Ozer
and Mullen, P.C.; and Robert
C. Ozer, Petitioners,

v.

Robert P. BORQUEZ, Respondent.

No. 96SC13.

Supreme Court of Colorado,
En Banc.

June 23, 1997.

---

Ozer & Ozer, P.C., Renee C. Ozer, Denver, for Petitioners.

Collins & Pringle, Dwight L. Pringle, Denver, Roger P. Borquez, Denver, for Respondent.

Thomas A. Feldman, Denver, for Amicus Curiae Plaintiff Employment Lawyers Association.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the court of appeals decision in *Borquez v. Robert C. Ozer, P.C.*, 923 P.2d 166 (Colo.App.1995). The court of appeals affirmed the trial court's judgment entered upon a jury verdict in favor of the respondent, Robert Borquez (Borquez), in his claims for wrongful discharge and invasion of privacy. We granted certiorari to address the following issues: (1) whether the court of appeals correctly held that the jury verdict on wrongful discharge based on sexual orientation was supportable as a violation of section 24–34–402.5(1), 10A C.R.S. (1996 Supp.); (2) whether the court of appeals correctly recognized an invasion of privacy tort claim based on unreasonable publicity given to one's private life; and (3) whether the court of appeals correctly held that the jury was properly instructed on the invasion of privacy tort claim.

We hold that, as to issue one, the court of appeals erroneously relied on section 24–34–402.5(1) in affirming the jury verdict; we therefore reverse the court on this issue. As to issue two, we affirm the court of appeals' recognition of a tort claim for invasion of privacy in the nature of unreasonable publicity given to one's private life. However, as to issue three, we reverse the court of appeals because in the current case, the trial court erroneously instructed the jury on the public disclosure requirement of this tort claim. We therefore affirm in part and reverse in part, and remand to the court of appeals with directions to return the case to the trial court for a new trial.

## I.

In June of 1990, Borquez began working as an associate attorney for Ozer & Mullen, P.C. (the Ozer law firm). During his employment with the Ozer law firm, Borquez received three merit raises, the last of which was awarded on February 15, 1992, eleven days prior to his termination.

On February 19, 1992, Borquez, who is homosexual, learned that his partner was diagnosed with Acquired Immune Deficiency Syndrome (AIDS). Borquez' physician advised him that he should be tested for the human immunodeficiency virus (HIV) immediately. Borquez was anxious about his health and determined that he could not effectively represent a client in a deposition that afternoon and an arbitration hearing the following day. Borquez subsequently telephoned his secretary and attempted to arrange for a colleague to fill in for him at the deposition and hearing. Borquez' secretary and another staff member told the president and shareholder of the law firm, Robert Ozer (Ozer), about Borquez' telephone call. Ozer then directed Borquez' secretary to transfer to him any further telephone calls from Borquez.

Borquez and Ozer subsequently spoke twice on the telephone. During the second conversation, Borquez decided that he would disclose his situation to Ozer. Borquez asked Ozer to keep the information he was about to disclose confidential, but Ozer made no reply. Borquez then told Ozer that he was homosexual, that his partner had been diagnosed with AIDS, and that he needed to be tested for HIV. Ozer responded by stating that he would handle the deposition and arbitration hearing and that Borquez should "do what [he needed] to do."

After speaking with Borquez, Ozer telephoned his wife, Renee Ozer, and told her of Borquez' disclosure.[1] Additionally, Ozer informed the law firm's office manager about Borquez' situation and discussed Borquez' disclosure with two of the law firm's secretaries. On February 21, 1992, Borquez returned to the office and became upset when he learned that everyone in the law firm knew about his situation. Later that afternoon, Ozer met with Borquez and told him that Ozer had not agreed to keep Borquez' disclosure confidential.

On February 26, 1992, one week after Borquez made his disclosure to Ozer, Borquez was fired. The Ozer law firm asserted that Borquez was terminated due to the law firm's poor financial circumstances. Borquez filed suit against the Ozer law firm and against Ozer as an individual, claiming wrongful discharge and invasion of privacy. Borquez alleged that he was discharged in violation of section 24–34–402.5(1), 10A C.R.S. (1996 Supp.) ("the lawful activities statute"), which makes it an unfair and discriminatory labor practice to discharge an employee based upon the employee's lawful activities outside the workplace. Borquez also contended that his termination violated the anti-discrimination provisions of the City

and County of Denver Revised Municipal Code ("the Denver ordinance"), which makes it unlawful for a private employer to discharge an employee in the City and County of Denver on the grounds that the employee is homosexual. Borquez further asserted that Ozer violated his right to privacy by disseminating private facts which Borquez had revealed and requested remain confidential. In addition to compensatory damages, Borquez sought exemplary damages for his discharge in violation of the lawful activities statute and the Denver ordinance, and for the violation of his right to privacy.

On July 12, 1993, a five-day trial commenced in this case. At the beginning of the trial, due to uncertainty regarding the validity of the Denver ordinance,[2] the trial court suggested that it avoid trying the case based specifically on the Denver ordinance or the lawful activities statute. Instead, the trial court proposed that the case be tried "to decide factually whether ... the discharge was for sexual orientation or for some other reason." The trial court thus instructed the jury that Borquez was entitled to recover from Ozer and the Ozer law firm on his claim of wrongful discharge if the jury found that Borquez "would not have been dismissed but for his sexual orientation." The jury found in favor of Borquez and awarded him damages totaling $90,841. The jury set compensatory damages at $30,841 for the wrongful discharge claim and $20,000 for the invasion of privacy claim, and awarded exemplary damages in the sum of $40,000.

Ozer and the Ozer law firm appealed the trial court's entry of judgment in favor of Borquez, asserting *inter alia* that the jury's verdict on the wrongful discharge claim was erroneously based on the Denver ordinance because the ordinance did not imply a private cause of action and because the ordinance

1. Renee Ozer, a shareholder of the Ozer law firm and the supervisor of the Colorado Springs and Pueblo offices of the law firm, in turn disclosed Borquez' situation to a staff attorney at the Colorado Springs office.

2. Borquez filed this action against Ozer and the Ozer law firm in September of 1992. In November of 1992, the Colorado electorate passed a voter-initiated amendment to the Colorado Constitution ("Amendment 2") which prohibited the

State from enacting any laws providing protected status to persons based on their homosexual or bisexual orientation. Amendment 2 effectively invalidated ordinances such as the Denver ordinance at issue in the current case. However, the Denver District Court preliminarily enjoined Amendment 2 before it became effective, and we affirmed the injunction on July 19, 1993. *Evans v. Romer*, 854 P.2d 1270, 1286 (Colo.1993) (*Evans I*).

was barred by section 30b of Article II of the Colorado Constitution ("Amendment 2").[3] Ozer and the Ozer law firm further argued that the jury's verdict on Borquez' invasion of privacy claim should be reversed because (a) Colorado does not recognize a tort for invasion of privacy in the nature of "unreasonable publicity given to the life of another"; (b) the evidence in this case did not support a claim for invasion of privacy; and (c) the jury instructions for the invasion of privacy claim were incorrect. Borquez cross-appealed the trial court's refusal to enter judgment pursuant to the lawful activities statute and the court's denial of nearly all of his costs.

The court of appeals affirmed the trial court's entry of judgment in favor of Borquez. The court of appeals declined to address whether the jury verdict on the wrongful discharge claim was supported by the Denver ordinance, but the court affirmed the verdict by concluding that it was supported by the lawful activities statute. The court of appeals also recognized an invasion of privacy tort claim based on unreasonable publicity given to one's private life and found that the jury instructions regarding this claim did not constitute reversible error.

## II.

■ The first issue before us is whether the court of appeals correctly held that the jury verdict on wrongful discharge based on sexual orientation was supportable as a violation of the lawful activities statute.

The lawful activities statute provides as follows:

> It shall be a discriminatory or unfair employment practice for an employer to terminate the employment of an employee *due to that employee's engaging in any lawful activity* off the premises of the employer during nonworking hours. . . .

§ 24–34–402.5(1), 10A C.R.S. (1996 Supp.) (emphasis added). According to the language of the lawful activities statute, a jury instruction submitted pursuant to this statute would necessarily include an element providing that the employee was discharged because he or she engaged in lawful activity away from the employer's premises during nonworking hours.

In contrast, the Denver ordinance provides as follows:

> (a) Generally. It shall be a discriminatory practice to do any of the following acts based upon the race, color, religion, national origin, gender, age, *sexual orientation*, marital status or physical or mental disability of any individual who is otherwise qualified:
>
> (1) By an employer: To fail or to refuse to hire an applicant or *to discharge any individual* or otherwise to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment. . . .

Denver, Colo., Revised Municipal Code § 28–93(a)(1) (1991) (emphasis added). According to the language of the Denver ordinance, a jury instruction submitted pursuant to this ordinance under the facts of this case would necessarily include an element providing that the employee was discharged due to his or her sexual orientation.

In the current case, Borquez requested a jury instruction worded pursuant to the Denver ordinance and a separate jury instruction worded pursuant to the lawful activities statute.[4] However, the trial court only instruct-

---

**3.** In October of 1994, we issued our opinion in *Evans v. Romer*, 882 P.2d 1335, 1350 (Colo.1994) (*Evans II*), holding that Amendment 2 did not serve a compelling state interest in a narrowly tailored way. We thus permanently enjoined the enforcement of Amendment 2. *Id.* In February 1995, the United States Supreme Court granted certiorari review of our opinion in *Evans II. Romer v. Evans*, 513 U.S. 1146, 115 S.Ct. 1092, 130 L.Ed.2d 1061 (1995). In November 1995, the court of appeals reviewed Ozer's and the Ozer law firm's appeal of the judgment entered in favor of Borquez. Thus, Amendment 2 and its effect on ordinances such as the Denver ordinance were under review by the United States Supreme Court when the court of appeals was reviewing the current case. In May 1996, the United States Supreme Court issued its opinion in *Romer v. Evans*, —— U.S. ——, ——, 116 S.Ct. 1620, 1629, 134 L.Ed.2d 855 (1996), holding that Amendment 2 violated the Equal Protection Clause of the United States Constitution.

**4.** Specifically, Borquez requested the following jury instructions for his claim of wrongful discharge:

ed the jury pursuant to the Denver ordinance and did not instruct the jury pursuant to the lawful activities statute. Specifically, the trial court instructed the jury on Borquez' wrongful discharge claim as follows:

> In order for the Plaintiff to recover from the Defendants on his claim for discriminatory discharge, you must find by a preponderance of the evidence that:
> 1. Plaintiff was dismissed by Defendants; and
> 2. *The Plaintiff would not have been dismissed but for his sexual orientation;*
> 3. The Plaintiff suffered damages as a result of his termination.

Instruction No. 5 (emphasis added). Essentially, this jury instruction was worded pursuant to Borquez' requested jury instruction based on the Denver ordinance. As such, we conclude that this case was submitted to the jury pursuant to the Denver ordinance only.[5]

Nevertheless, the court of appeals determined that this case was submitted to the jury pursuant to both the Denver ordinance and the lawful activities statute. The court of appeals thus declined to address whether the jury verdict was supported by the Denver ordinance, and instead determined that the verdict was supported by the lawful activities statute. We now hold that the court of appeals erroneously relied on the lawful activities statute to affirm the jury verdict on Borquez' wrongful discharge claim.

The court of appeals erroneously decided that a theory of liability supports the jury verdict when such a theory was never submitted to the jury by the trial court. *Cf. Maloy v. Griffith,* 125 Colo. 85, 91, 240 P.2d 923, 926 (1952) (holding that it is the duty of the jury to render its verdict based upon

instructions given to it by trial court). Although the evidence presented at trial in the current case may have supported a finding that Borquez was discharged because he engaged in lawful activity away from the Ozer law firm's premises during nonworking hours, the jury was not instructed to make such a finding in deciding Borquez' wrongful discharge claim. Instead, the jury was simply instructed to determine whether Borquez was discharged due to his sexual orientation. As such, the jury verdict in this case can no more be sustained on the basis of the lawful activities statute than it could be sustained on the basis of any other theories of liability not submitted to the jury. We conclude that because Borquez' claim was not submitted to the jury pursuant to the lawful activities statute, the court of appeals erroneously ruled that the jury verdict in this case was supported by that statute.[6] We therefore reverse the court of appeals on this issue.

### III.

The next issue before us is whether the court of appeals correctly recognized an invasion of privacy tort claim based on unreasonable publicity given to one's private life.

In *Rugg v. McCarty,* 173 Colo. 170, 174, 476 P.2d 753, 755 (1970), we first recognized in Colorado "a right of privacy, an invasion of which may be compensated by damages." *Id.* (quoting § 40–4–33, 10 C.R.S. (1967)). However, we specifically declined to comprehensively categorize the character of all invasions which may constitute a violation of the right of privacy. *Rugg,* 173 Colo. at 175, 476 P.2d at 755. Thus, the issue of whether the right of privacy encompasses a tort claim based on unreasonable publicity given to

---

*Instruction No. 16*
In order for the Plaintiff to recover from the Defendants on his claim for violation of the Denver Human Rights Ordinance, you must find by a preponderance of the evidence that:
1. Plaintiff was terminated from his employment by Defendants;
2. based on his sexual orientation; and
3. Plaintiff suffered damages as a result of his termination.
*Instruction No. 18*
In order for the Plaintiff to recover from Defendants on his claim for violation of [section] 24–34–402.5, you must find by a preponderance of the evidence that:

1. Plaintiff was dismissed by Defendants; and
2. A motivating factor in Plaintiff's dismissal was his engaging in a lawful activity off the premises of Ozer & Mullen, P.C.

**5.** In an order dated November 3, 1993 denying attorney's fees for Borquez' attorney, the trial court stated that "[t]his action was not entertained under the [lawful activities] statute cited."

**6.** We do not decide here whether Borquez was entitled to have his claim of wrongful discharge submitted to the jury based on the lawful activities statute.

one's private life is an issue of first impression in Colorado. We therefore turn to other jurisdictions for guidance in deciding whether to recognize such a tort claim in Colorado.

It is generally recognized by a majority of jurisdictions that the right of privacy may be invaded in four different ways: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public. *See, e.g., Forsher v. Bugliosi*, 26 Cal.3d 792, 163 Cal.Rptr. 628, 637–38, 608 P.2d 716, 725 (1980); *Goodrich v. Waterbury Republican–American, Inc.*, 188 Conn. 107, 448 A.2d 1317, 1329 (1982); *State Farm Fire & Cas. Co. v. Compupay, Inc.*, 654 So.2d 944, 948–49 (Fla.Dist.Ct.App.1995); *Cabaniss v. Hipsley*, 114 Ga.App. 367, 151 S.E.2d 496, 500 (1966); *Miller v. Motorola, Inc.*, 202 Ill.App.3d 976, 148 Ill.Dec. 303, 304, 560 N.E.2d 900, 901 (1990); *Beaumont v. Brown*, 401 Mich. 80, 257 N.W.2d 522, 527 (1977); *Corcoran v. Southwestern Bell Tel. Co.*, 572 S.W.2d 212, 214 (Mo.Ct.App.1978); *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d 163, 499 N.E.2d 1291, 1294 (1985). More specifically, a majority of jurisdictions have recognized that the right of privacy encompasses a tort claim based on unreasonable publicity given to one's private life.

■ In accordance with these jurisdictions, we now recognize in Colorado a tort claim for invasion of privacy in the nature of unreasonable publicity given to one's private life. In order to prevail on such a claim, we hold that the following requirements must be met: (1) the fact or facts disclosed must be private in nature; (2) the disclosure must be made to the public; (3) the disclosure must be one which would be highly offensive to a reasonable person; (4) the fact or facts disclosed cannot be of legitimate concern to the public; and (5) the defendant acted with reckless disregard of the private nature of the fact or facts disclosed.

■ The first requirement of a tort claim for invasion of privacy in the nature of

unreasonable publicity given to one's private life is that the facts disclosed be private in nature. *See Forsher*, 163 Cal.Rptr. at 637–38, 608 P.2d at 725; *Cabaniss*, 151 S.E.2d at 501; *Corcoran*, 572 S.W.2d at 214–15; *Killilea*, 499 N.E.2d at 1295. The disclosure of facts that are already public will not support a claim for invasion of privacy. *See Aquino v. Bulletin Co.*, 190 Pa.Super. 528, 154 A.2d 422, 426–27 (1959) (holding that issuance of marriage license or divorce decree was matter of public record and could be disclosed without invading right of privacy); *Alarcon v. Murphy*, 201 Cal.App.3d 1, 248 Cal.Rptr. 26, 29–30 (1988) (holding that arrest warrant which was part of court file is public record and could be disclosed without violating right of privacy). In contrast, facts related to an individual's sexual relations, or "unpleasant or disgraceful" illnesses, are considered private in nature and the disclosure of such facts constitutes an invasion of the individual's right of privacy. Restatement (Second) of Torts § 652D cmt. b (1976).

■ The second requirement of a tort claim for invasion of privacy based on unreasonable publicity given to one's private life is that the disclosure be made to the public. *See Forsher*, 163 Cal.Rptr. at 637–38, 608 P.2d at 725; *Cabaniss*, 151 S.E.2d at 501; *Corcoran*, 572 S.W.2d at 214; *Killilea*, 499 N.E.2d at 1294. The requirement of public disclosure connotes publicity, which requires communication to the public in general or to a large number of persons, as distinguished from one individual or a few.[7] *See Brown v. Mullarkey*, 632 S.W.2d 507, 509–10 (Mo.Ct. App.1982) (holding that no public disclosure occurred when plaintiff's personnel file was released to attorneys representing defendant in personal injury suit); *Porten v. University of San Francisco*, 64 Cal.App.3d 825, 134 Cal.Rptr. 839, 841 (1976) (holding that no public disclosure occurred when plaintiff's school grades were disclosed to scholarship and loan commission because grades were not released to public in general or large number of persons).

---

7. We note that public disclosure may occur where the defendant merely initiates the process whereby the information is eventually disclosed

to a large number of persons. *See Beaumont v. Brown*, 401 Mich. 80, 257 N.W.2d 522, 530 (1977).

■ Although the disclosure must be made to the general public or to a large number of persons, there is no threshold number which constitutes "a large number" of persons. Rather, the facts and circumstances of a particular case must be taken into consideration in determining whether the disclosure was sufficiently public so as to support a claim for invasion of privacy. *See, e.g., Kinsey v. Macur*, 107 Cal.App.3d 265, 165 Cal.Rptr. 608, 611 (1980) (holding that defendant's dissemination of copies of a letter to only twenty people constituted public disclosure).

■ The third requirement of a tort claim for invasion of privacy in the nature of unreasonable publicity given to one's private life is that the disclosure be one which would be highly offensive to a reasonable person. *See Forsher*, 163 Cal.Rptr. at 637–38, 608 P.2d at 725; *Cabaniss*, 151 S.E.2d at 501; *Corcoran*, 572 S.W.2d at 215; *Killilea*, 499 N.E.2d at 1295. *But see Slawek v. Stroh*, 62 Wis.2d 295, 215 N.W.2d 9, 20 (1974) (holding that claim for unreasonable publicity given to one's private life requires showing of malicious intent and outrageous conduct). The term "highly offensive" has been construed to mean that the disclosure would cause emotional distress or embarrassment to a reasonable person. *See Brown v. American Broadcasting Co., Inc.*, 704 F.2d 1296, 1302 (4th Cir.1983). The determination of whether a disclosure is highly offensive to the reasonable person is a question of fact and depends on the circumstances of a particular case. *Compare Urbaniak v. Newton*, 226 Cal. App.3d 1128, 277 Cal.Rptr. 354, 360 (1991) (holding that disclosure of HIV positive status was highly offensive to reasonable person) *with Virgil v. Sports Illustrated*, 424 F.Supp. 1286, 1289 (S.D.Cal.1976) (holding that disclosure of person's unflattering habits and idiosyncracies was not highly offensive to reasonable person).

■ The fourth requirement of a tort claim for invasion of privacy in the nature of unreasonable publicity given to one's private life is that the facts disclosed are not of legitimate concern to the public. *See Killilea*, 499 N.E.2d at 1295; *Diaz*, 188 Cal.Rptr. at 771–72. The right of privacy may potentially clash with the rights of free speech and free press guaranteed by the United States and Colorado Constitutions. *See* U.S. Const. amend. I; Colo. Const., art. II, § 10. The rights of free speech and free press protect the public's access to information on matters of legitimate public concern. *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 491–92, 95 S.Ct. 1029, 1044–45, 43 L.Ed.2d 328 (1975).[8] As such, the right of the individual to keep information private must be balanced against the right to disseminate newsworthy information to the public. *See Gilbert v. Medical Econs. Co.*, 665 F.2d 305, 307 (10th Cir.1981). As the Tenth Circuit Court of Appeals stated in *Gilbert*, "to properly balance freedom of the press against the right of privacy, every private fact disclosed in an otherwise truthful, newsworthy publication must have some substantial relevance to a matter of legitimate public interest." *Id.* at 308; *see also Virgil v. Time, Inc.*, 527 F.2d 1122, 1129 (9th Cir.1975) (holding that liability may be imposed for invasion of privacy only if matter publicized is of a kind which is not of legitimate concern to public).

■ The term newsworthy is defined as "[a]ny information disseminated 'for purposes of education, amusement or enlightenment, when the public may reasonably be expected to have a legitimate interest in what is published.'" *Gilbert*, 665 F.2d at 308 (quoting Restatement (Second) of Torts § 652D cmt. j (1976)). In determining whether a subject is of legitimate public interest, "[t]he line is to be drawn when the publicity ceases to be the giving of information to which the public is entitled, and becomes a morbid and sensational prying into private lives for its own sake." Restatement (Second) of Torts § 652D cmt. h (1976). The newsworthiness test "properly restricts liability for public disclosure of private facts to

---

8. In *Cox*, 420 U.S. at 491, 95 S.Ct. at 1044, the United States Supreme Court held that under the First Amendment, a plaintiff could not recover for publicity of facts that were a matter of public record. However, the Court explicitly declined to address the broader question of whether a plaintiff could constitutionally recover for publicity of private facts that are not a matter of public record. *See id.*

the extreme case, thereby providing the breathing space needed by the press." *Gilbert,* 665 F.2d at 308. As such, the requirement that the facts disclosed must not be of legitimate concern to the public protects the rights of free speech and free press guaranteed by the United States and Colorado Constitutions.

■ The final requirement of a tort claim for invasion of privacy in the nature of unreasonable publicity given to one's private life is that the defendant acted with reckless disregard of the private nature of the fact or facts disclosed. A person acts with reckless disregard if, at the time of the publicity, the person knew or should have known that the fact or facts disclosed were private in nature. *Cf.* COLJI–Civ. 22:3 (1997 Supp.); COLJI–Civ. 23:3 (1989); *see also Diversified Management, Inc. v. The Denver Post, Inc.,* 653 P.2d 1103, 1109–10 (Colo.1982).

Accordingly, we recognize in Colorado a tort claim for invasion of privacy in the nature of unreasonable publicity given to one's private life. We therefore affirm the court of appeals' recognition of this tort claim.

### IV.

■ The final issue before us is whether the court of appeals correctly held that the jury was properly instructed on Borquez' invasion of privacy tort claim based on unreasonable publicity given to one's private life. As discussed in section III above, this tort claim requires public disclosure of private facts. Public disclosure connotes publicity, and the term "publicity" is distinct from the term "publication." *See* Restatement (Second) of Torts § 652D cmt. a (1976). The term "publicity" requires communication to the public in general or to a large number of persons rather than to just one individual or a few. *See Brown,* 632 S.W.2d at 509–10; *Porten,* 134 Cal.Rptr. at 841. In contrast, the term "publication," as it is applied in defamation claims, "is a word of art, which includes any communication by the defendant to a third person." Restatement (Second) of Torts § 652D cmt. a (1976).

■ In the current case, the trial court instructed the jury regarding the public disclosure requirement of Borquez' claim for invasion of privacy as follows:

A statement is "published" when it is communicated orally to and is understood by some person other than the plaintiff.

Instruction No. 7. The trial court thus instructed the jury that the public disclosure requirement was met if Ozer's disclosure was simply made to "some other person" rather than to a large number of persons or the general public. The effect of this instruction was to permit the jury to render a verdict in favor of Borquez if it found that Ozer disclosed to any single individual the fact of Borquez' homosexuality and exposure to AIDS. However, the public disclosure requirement renders Ozer liable for Borquez' invasion of privacy claim only if Ozer disclosed Borquez' situation to a large number of persons or the general public. Because the trial court instructed the jury regarding the term "publication" rather than "publicity," and because the terms "publication" and "publicity" are not interchangeable, we hold that the trial court's instruction was erroneous. We therefore reverse the court of appeals' holding on this issue.

### V.

In summary, we hold that the court of appeals erroneously relied on the lawful activities statute in affirming the jury verdict; we therefore reverse the court of appeals on this issue. Additionally, we hold that the court of appeals properly recognized in Colorado a tort claim for invasion of privacy in the nature of unreasonable publicity given to one's private life. In order to prevail on such a tort claim, we hold that the following requirements must be met: (1) the fact or facts disclosed must be private in nature; (2) the disclosure must be made to the public; (3) the disclosure must be one which would be highly offensive to a reasonable person; (4) the fact or facts disclosed cannot be of legitimate concern to the public; and (5) the defendant acted with reckless disregard of the private nature of the fact or facts disclosed. However, we conclude that in the current case, the trial court erroneously instructed the jury on the public disclosure requirement of this tort claim; we therefore reverse the

court of appeals as to this issue. Accordingly, we affirm in part and reverse in part, and remand to the court of appeals with directions to return the case to the trial court for a new trial.

HOBBS and BENDER, JJ., do not participate.