John DOE, Plaintiff–Appellant,

v.

HIGH–TECH INSTITUTE, INC., d/b/a Cambridge College, an Arizona corporation, Defendant–Appellee.

No. 97CA0385.

Colorado Court of Appeals, Div. III.

July 9, 1998.

As Modified on Denial of Rehearing Aug. 6, 1998.

Certiorari Denied March 1, 1999.*

* Chief Justice MULLARKEY and Justice BENDER would grant as to the following issues:

Whether respondent's intrusion on seclusion claim is moot.

Whether the court of appeals erred in determining that an intrusion on seclusion claim is cognizable in Colorado.

Whether respondent stated a claim for intrusion on seclusion.

Justice RICE does not participate.

Robert P. Borquez, Denver, Colorado, for Plaintiff–Appellant.

Burg & Eldredge, P.C., Diane V. Smith, Englewood, Colorado, for Defendant–Appellee.

Temple Law School, Scott Burris, Associate Professor, Philadelphia, Pennsylvania, for Amicus Curiae The American Civil Liberties Union AIDS/HIV Project; Mark Silverstein, Legal Director, Denver, Colorado, for Amicus Curiae The American Civil Liberties Union of Colorado; Chester R. Chapman, Michael W. Breeskin, Denver, Colorado, for Amicus Curiae The Legal Center for People with Disabilities and Older People.

Agneta Breitenstein, Boston, Massachusetts, for Amicus Curiae JRI Health Law Institute; Kevin W. Williams, Denver, Colorado, for Amicus Curiae Colorado Cross–Disability Coalition.

Opinion by Judge DAVIDSON.

This action concerns the unauthorized testing of a blood sample and the subsequent publication of the results of that test. In his complaint against defendant, High–Tech Institute, Inc., d/b/a Cambridge College (Cambridge), plaintiff, John Doe, brought several claims for relief including, as relevant here, two claims for invasion of privacy, one premised on a theory of intrusion upon seclusion for the improper appropriation of private information, and another premised on public disclosure of private facts for the improper publication of that information. He appeals from the judgment entered against him by the trial court dismissing the claim for intrusion upon seclusion pursuant to C.R.C.P. 12(b)(5). We reverse and remand.

According to his complaint, plaintiff was a student in Cambridge's medical assistant training program. Shortly after the beginning of a class, he informed the instructor that he had tested positive for human immunodeficiency virus (HIV) as the result of an anonymous blood test and requested the instructor to treat that information as confidential.

That same month, the instructor informed the class that all students at Cambridge were required to be tested for rubella. Each student was given a consent form indicating that such test would be performed on a blood sample. Plaintiff signed and returned the consent form with the understanding that his blood sample would be tested only for rubella. Without plaintiff's knowledge, the instructor requested the laboratory doing the testing also to test plaintiff's blood sample for HIV. She did not request this test for any other student. The test yielded a positive result for HIV. The laboratory, as required under § 25–4–1402, C.R.S.1997, reported plaintiff's name, address, and positive HIV status to the Colorado Department of Health and informed Cambridge of the test results.

As a result of these events, plaintiff filed suit against Cambridge and the laboratory asserting several claims, including those described above.

The laboratory moved for and was granted dismissal of the claim for intrusion upon seclusion. Plaintiff later settled with the laboratory on his other claims.

Thereafter, based on the laboratory's dismissal, Cambridge filed a motion pursuant to C.R.C.P. 12(b)(5) to dismiss plaintiff's claim for intrusion upon seclusion, and the motion was granted effectively on the same grounds. The remaining claims proceeded to trial and a jury determined that Cambridge was liable to plaintiff on his claim of invasion of privacy based upon unreasonable disclosure of private facts.

I.

Initially, Cambridge contends that plaintiff's appeal of the dismissal of his claim of intrusion upon seclusion is moot because he received a judgment after trial on his claim of invasion of privacy based upon unreasonable public disclosure of private facts. Cambridge argues that the claim on which plaintiff received judgment and the claim which was dismissed are simply different facets of a single claim of invasion of privacy and that, because plaintiff accepted the judgment awarded upon one claim, the other claim necessarily is rendered moot. We disagree.

A.

Invasion of privacy is a generic term for a number of separate torts commonly identified as: (1) publicity that places one in a

false light in the public eye; (2) appropriating one's name or likeness for another's benefit; (3) public disclosure of private facts, which concerns the communication or publication to third parties of information or activities which a person has held private; and, at issue here, (4) intrusion upon seclusion, which focuses on the manner in which information that a person has kept private has been obtained. *See* Prosser, *Privacy*, 48 Cal. L.Rev. 383 (1960).

■ Although all of these claims concern, in the abstract, the concept of being left alone, each tort has distinct elements and establishes a separate interest that may be invaded. *See Wolf v. Regardie*, 553 A.2d 1213 (D.C.Ct.App.1989); *see also Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371 (Colo. 1997) (noting that other jurisdictions recognize that privacy may be invaded in four ways).

According to Restatement (Second) of Torts § 625B (1981), to prevail on a claim for intrusion upon seclusion as a violation of one's privacy, a plaintiff must show that another has intentionally intruded, physically or otherwise, upon the plaintiff's seclusion or solitude, and that such intrusion would be considered offensive by a reasonable person. *See also Purrelli v. State Farm Fire & Casualty Co.*, 698 So.2d 618 (Fla.Ct.App.1997).

■ On the other hand, to prevail on a claim for unreasonable disclosure of private facts, a plaintiff must establish that: (1) the fact disclosed was private in nature; (2) the disclosure was made to the public; (3) the disclosure was one which would be highly offensive to a reasonable person; (4) the disclosed fact was not of legitimate concern to the public; and (5) the one who disclosed the fact did so with reckless disregard of the private nature of the fact disclosed. *Robert C. Ozer, P.C. v. Borquez, supra.*

■ Thus, not only do the two claims contain different elements that must be established, but here, each claim arises under differing circumstances and is established by different facts. The basis for plaintiff's claim for intrusion upon seclusion is the improper appropriation of private information resulting from the HIV test that was performed without his knowledge or consent. In contrast, plaintiff's claim for unreasonable disclosure of private facts arose from the laboratory's reporting of the results of the unauthorized blood test to the department of health and Cambridge's disclosure of the results to third parties.

**B.**

Cambridge argues that, nevertheless, even if plaintiff were allowed to proceed on his claim of intrusion upon seclusion, any damages he might be awarded would simply be duplicative of the damages he has already received. Alternatively, Cambridge points out that plaintiff has not appealed from the judgment entered in his favor on his claim for unreasonable disclosure of private facts. Thus, Cambridge asserts, because plaintiff has accepted the benefits of the judgment, he is precluded from challenging the dismissal of his seclusion claim. We disagree with both contentions.

**1.**

■ Generally, a plaintiff may not receive a double recovery for the same wrong. *Lexton–Ancira Real Estate Fund v. Heller*, 826 P.2d 819 (Colo.1992). However, as discussed, the claims made by plaintiff, while based on events occurring close in time, are not supported by identical evidence and do not comprise the same wrong. Accordingly, plaintiff is not seeking duplicative damages for the same loss under an alternative theory. Rather, he seeks damages for Cambridge's conduct prior to and apart from any disclosure of his HIV status. Thus, the fact that plaintiff received a judgment on one claim does not render moot his appeal of the dismissal of the other claim.

**2.**

■ Although, generally, a party who has accepted the benefits of a judgment may not seek reversal of that judgment on appeal, an appeal may lie if the provisions of the judgment from which the appeal is taken are not mutually dependent on those provisions from which the party has accepted the benefits, and reversal of the former will not require

reversal of the latter. *Rasheed v. Mubarak,* 695 P.2d 754 (Colo.App.1984); *see Paulu v. Lower Arkansas Valley Council of Governments,* 655 P.2d 1391 (Colo.App.1982) (plaintiff who accepted benefit of judgment on contract claim was allowed to appeal denial of assessment of penalty and attorney fees against defendant because the appeal was based on a statutory claim).

Underlying this rule is the possibility that an appeal may lead to a result showing that a plaintiff is not entitled to what has been received under the judgment from which the appeal is taken. *See Colorado Mountain Properties, Inc. v. Heineman,* 860 P.2d 1388 (Colo.App.1993) (plaintiff, who received damages for illegal taking and refused to accept amount awarded for nominal damages on related claim, allowed to appeal nominal damage award).

Here, reversal of the dismissal of the intrusion upon seclusion claim does not require reversal of the judgment for plaintiff for his claim of unreasonable public disclosure of private facts. The two claims are not mutually dependent. As discussed, they are distinct and discrete claims and are established by different facts.

■ Additionally, that plaintiff has received damages for his claim of unreasonable public disclosure of private facts does not preclude an award of damages for his claim of intrusion upon seclusion.

One who suffers an intrusion upon his or her seclusion is entitled to recover damages for the harm to the particular privacy interest that has been invaded. Here, the alleged harm as to that claim does not result from the unreasonable dissemination of private information but, instead, rests upon the improper appropriation of that information.

■ And, such damages for that invasion may include: (1) general damages for harm to a plaintiff's interest in privacy resulting from the invasion; (2) damages for mental suffering; (3) special damages; and (4) nominal damages if no other damages are proven. *See Sabrina W. v. Willman,* 4 Neb.App. 149, 540 N.W.2d 364 (1995); *see also Snakenberg v. Hartford Casualty Insurance Co.,* 299 S.C. 164, 383 S.E.2d 2 (1989) (if a plaintiff proves the liability of a defendant for intrusion upon seclusion, then the fact of damages is established as a matter of law); *see generally* Restatement (Second) of Torts § 652H (1981). Such damages are to compensate a plaintiff for the mental suffering incurred as a result of the invasion. *Monroe v. Darr,* 221 Kan. 281, 559 P.2d 322 (1977).

Here, although it is undisputed that the jury heard evidence of the unauthorized test, it is apparent from the verdict forms that the jury was not instructed to determine whether the test itself caused damage to plaintiff. The jury was asked only to determine whether Cambridge unreasonably made public disclosure of a private fact—plaintiff's HIV status—and if plaintiff was damaged by such disclosure. That the jury found for Cambridge on plaintiff's other claim, not relevant here, and for plaintiff on his claim for unreasonable public disclosure demonstrated that the jury was capable of distinguishing Cambridge's different actions and, therefore, a jury could determine, if so instructed, for which actions, if any, Cambridge should be held liable.

## II.

In addressing the merits of this appeal, we must answer two questions: (1) Does an unreasonable intrusion upon seclusion constitute a cognizable claim for relief in Colorado; and (2) if so, has plaintiff here stated such a claim. We answer both in the affirmative.

Here, in its order dismissing plaintiff's claim, the trial court assumed that an intrusion upon seclusion claim was cognizable, but determined that, nevertheless, the allegations of the complaint, taken as true, failed to state such a claim. Cambridge urges first, however, that we simply not recognize a claim for relief based on intrusion upon seclusion. Alternatively, even if we recognize such tort, Cambridge argues, the trial court correctly determined that plaintiff has failed to state a claim because he has no seclusion or privacy interest in a relinquished blood sample that he has, in effect, abandoned or released to the public, and even if he has such privacy interest in the seclusion of his blood, the extra test performed on the relinquished

blood sample was not so unreasonable as to establish a claim for relief. With each contention, however, we disagree.

### A.

Colorado already has recognized, generally, a claim for relief for invasion of privacy. *See Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (1970). In *Rugg,* although the court declined to attempt to delineate all the circumstances which would constitute a violation of one's right to privacy, it did not preclude such decisions in the future. Moreover, recently, the supreme court also has recognized a claim for invasion of privacy based upon an unreasonable disclosure of private facts. *See Robert C. Ozer, P.C. v. Borquez, supra.*

■ Because, as discussed, the concept of invasion of privacy is reflected, not in one tort but in at least four, each having distinct elements and establishing a separate interest that may be invaded, *Wolf v. Regardie, supra,* and because recognition of a claim under one aspect of the privacy tort does not entail recognition of all four, *Doe v. Methodist Hospital,* 690 N.E.2d 681 (Ind.1997), recognition of invasion of privacy by unreasonable publicity given to one's personal life does not, of itself, constitute recognition or rejection of intrusion upon seclusion as a claim for relief.

However, the vast majority of courts in other jurisdictions which have recognized other types of common law privacy claims, without significant debate, also have recognized the existence of a discrete claim for invasion of privacy based on intrusion upon seclusion. *See Norris v. Moskin Stores, Inc.,* 272 Ala. 174, 132 So.2d 321 (1961); *Estate of Berthiaume v. Pratt,* 365 A.2d 792 (Me.1976); *Corcoran v. Southwestern Bell Telephone Co.,* 572 S.W.2d 212 (Mo.Ct.App.1978); *Billings v. Atkinson,* 489 S.W.2d 858 (Tex.1973); *Lewis v. Physicians & Dentists Credit Bureau,* 27 Wash.2d 267, 177 P.2d 896 (1947); *Zinda v. Louisiana Pacific Corp.,* 149 Wis.2d 913, 440 N.W.2d 548 (1989).

Although using slightly varying terms, those jurisdictions describe this claim as an intentional tort in which a plaintiff must establish that: (1) another person has intentionally intruded, physically or otherwise; (2) upon the plaintiff's seclusion or solitude; and (3) such intrusion would be offensive or objectionable to a reasonable person. *See, e.g., Purrelli v. State Farm Fire & Casualty Co., supra.*

This is consistent with the common law definition of invasion of privacy by intrusion upon seclusion as set forth under the Restatement (Second) of Torts § 652B (1981) which provides that:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

*See Grease Monkey International, Inc. v. Montoya,* 904 P.2d 468 (Colo.1995) (court may apply restatement as a formulation of law applicable to an issue before the court).

Interestingly, we also note, although the supreme court did not label it as such, in *Rugg v. McCarty, supra,* the defendant's repeated and harassing telephone calls to the plaintiff effectively constituted a violation of the plaintiff's right to privacy based on an intrusion upon her seclusion. *See Dunlap v. McCarty,* 284 Ark. 5, 678 S.W.2d 361 (1984); *see generally* W. Prosser & W. Keeton, *Torts* § 117 (5th ed.1984) (examples of intrusion upon seclusion include eavesdropping by wiretapping and persistent and unwanted telephone calls).

■ Thus, consistent with prior recognition of such claims, and in accordance with the views expressed in other jurisdictions, we see no reason in law or policy not to recognize a claim of invasion of privacy by intrusion upon one's seclusion.

### B.

We conclude that plaintiff's complaint sufficiently stated such a claim.

■ In determining a motion to dismiss for failure to state a claim, a court must accept the facts stated in the complaint as true, and on the basis of such facts, decide whether, under any theory of law, a plaintiff

is entitled to relief. If relief can be granted under such circumstances, then the motion to dismiss must be denied. *Schlitters v. State,* 787 P.2d 656 (Colo.App.1989).

Accordingly, here, the facts as alleged in plaintiff's complaint, taken as true, must show that he had a privacy interest in the seclusion of his blood sample and that the unauthorized additional test performed upon the sample was an offensive intrusion.

### 1.

There are very few reported cases which involve factual circumstances similar to those presented here. However, in *Doe v. Dyer-Goode,* 389 Pa.Super. 151, 566 A.2d 889 (1989), upon considering an intrusion upon seclusion claim, the court determined that a plaintiff, by consenting to a premarital blood test, voluntarily relinquished the blood sample and, therefore, no longer held the sample in private seclusion. That court further determined that the defendant would be liable to the plaintiff only if the additional test unreasonably invaded the plaintiff's private seclusion. The court concluded that, because the plaintiff did not hold the blood sample in private seclusion, the test could not be considered an invasion.

Here, the trial court, relying on *Doe v. Dyer–Goode, supra,* similarly determined that plaintiff's act of relinquishing the blood sample with permission to conduct a specific test extinguished any seclusion plaintiff may have had in his blood sample prior to its being taken.

 Cambridge argues that the trial court was correct and that a person's privacy interest ends once the blood is removed from the body and that, therefore, here, plaintiff had no reasonable expectation of privacy in his blood sample once it was drawn. We disagree. Instead, we conclude that a person has a privacy interest in his or her blood sample and in the medical information that may be obtained from it. We further conclude that an additional, unauthorized test, such as alleged here, can be sufficient to state a claim for relief for intrusion upon seclusion.

### 2.

 Although intrusion upon seclusion clearly encompasses an intrusion upon a physical space held in seclusion by a person, the element of seclusion also encompasses intrusions into a person's private concerns based upon a reasonable expectation of privacy in that area. *See Phillips v. Smalley Maintenance Services, Inc.,* 435 So.2d 705 (Ala.1983) (intrusion by employer into employee's sexual history); *Hamberger v. Eastman,* 106 N.H. 107, 206 A.2d 239 (1964) (common law tort of intrusion upon seclusion should protect people not places).

"There is a sphere of activity in every person's life that is closed to scrutiny by others. The boundaries of that sphere are determined by balancing a person's right to privacy against other public policies." *Luedtke v. Nabors Alaska Drilling, Inc.,* 768 P.2d 1123, 1135 (Alaska 1989); *cf. People v. Lesslie,* 939 P.2d 443 (Colo.App.1996) (reasonable expectation of privacy requires balancing a person's actual expectation of privacy in an area against society's willingness objectively to recognize the reasonableness of that expectation).

 We note first that there is a generally recognized privacy interest in a person's body. Because personal information concerning a person's health may be obtained through one's blood, urine, and other bodily products, such products cannot be extracted from a person or initially tested without either consent or proper authorization. *See Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).

 Similarly, there is a generally recognized privacy interest in information concerning one's health. *Norman–Bloodsaw v. Lawrence Berkeley Laboratory,* 135 F.3d 1260 (9th Cir.1998) (few matters are quite so personal as the status of one's health). Health records, which are compiled on the basis of tests and other examinations, generally are considered as confidential, and information contained in such records cannot be released or disclosed without a patient's consent and authorization. *See Division of Medical Quality v. Gherardini,* 93 Cal.

App.3d 669, 156 Cal.Rptr. 55, (1979) (recognizing a right of privacy in one's medical records).

■ Moreover, most information placed in these files is controlled by a person's consent, or withholding of permission, for certain tests. And, the mere act of placing information in these files does not make that information available to the public. Instead, there are strictly controlled, limited circumstances under which a person may obtain another's health records. *See generally* § 25–4–1404, C.R.S.1997 (prohibiting release of certain health care reports except in specified circumstances); § 10–3–1104.7(3), C.R.S. 1997 (information derived from genetic testing is confidential and privileged requiring written consent of person tested for disclosure of such information).

We see little difference between a person's objectively reasonable expectation to keep in seclusion the medical information that may be obtained from a blood sample and his or her expectation to keep in seclusion information in medical files. Thus, we conclude, there is a recognizable privacy interest in a person's blood sample and the medical information that may be derived from it.

### 3.

■ Cambridge argues that, even if plaintiff holds his blood sample in seclusion and has an expectation of privacy in such sample, here, the additional, unauthorized test conducted on his relinquished blood was so minimal, it cannot be considered an offensive intrusion as a matter of law. We disagree.

■ An offensive intrusion requires an unreasonable manner of intrusion or an intrusion for an unwarranted purpose. *Luedtke v. Nabors Alaska Drilling, Inc.*, *supra; see also University of Colorado v. Derdeyn*, 863 P.2d 929 (Colo.1993) (invasion of individual's privacy by random, suspicionless drug testing is not justified by any important government interest and, therefore, is unconstitutional). It is the degree of intrusion that determines whether such intrusion is offensive. *Werner v. Kliewer*, 238 Kan. 289, 710 P.2d 1250 (1985).

■ Here, contrary to Cambridge's assumption, the act of extracting a blood sample and the tests performed upon the sample are separate intrusions, requiring separate inquiries into a balancing of interests to determine whether each intrusion is reasonable. *Cf. Skinner v. Railway Labor Executives' Ass'n, supra* (blood draw and blood test are separate searches subject to separate analyses under the Fourth Amendment).

■ Simply because a blood test is unauthorized does not, of course, necessarily compromise privacy rights; the question must be whether the nature of the intrusion was such so that it can be considered unwarranted or offensive under the circumstances. *See Johnson v. Corporate Special Services, Inc.*, 602 So.2d 385 (Ala.1992) (the means by which the intrusion is accomplished and the purpose of the intrusion are primary factors to consider); *cf. Norman–Bloodsaw v. Lawrence Berkeley Laboratory, supra* (unauthorized testing by federally funded agency may constitute a significant invasion of an individual's constitutional right to privacy); *Local 1812 v. United States Department of State*, 662 F.Supp. 50 (D.D.C.1987) (intrusion is minimal because testing performed on sample already required as part of a general examination conducted in a reasonable manner to protect individual's constitutional right to privacy); *Anonymous Fireman v. City of Willoughby*, 779 F.Supp. 402 (N.D.Ohio 1991) (minimal intrusion on individual's constitutional right to privacy to perform blood test on sample previously obtained as part of assessing employees' fitness to serve); *In re Patchogue–Medford Congress of Teachers v. Board of Education*, 119 A.D.2d 35, 505 N.Y.S.2d 888 (N.Y.App.Div.1986) (absent showing of reasonable suspicion, consent to regular medical examination required by school district under Fourth Amendment is not consent to drug test), *aff'd*, 70 N.Y.2d 57, 517 N.Y.S.2d 456, 510 N.E.2d 325 (1987).

Thus, in determining if the unauthorized performance of an HIV test, such as alleged here, would be offensive or objectionable to a reasonable person, we note first that what may be unreasonably intrusive is not the physical test of a blood sample itself. In-

stead, it is because particular, highly personal medical information may be obtained from such test that this intrusion may be offensive to a reasonable person. Indeed, "the most basic violation [of one's right to privacy] possible involves the performance of unauthorized tests—that is, the non-consensual retrieval of previously unrevealed medical information that may be unknown even to [plaintiff]. . . ." *Norman–Bloodsaw v. Lawrence Berkeley Laboratory, supra,* 135 F.3d at 1269 (determining that testing for syphilis, pregnancy, and sickle cell trait, conducted without plaintiffs' knowledge or consent, was unreasonable).

▮ The intrusion to be evaluated is, in this regard, the interference with a person's autonomy, that is, the right of an individual to control important health decisions, such as whether to have one's blood tested for a particular disease, condition, or genetic trait. *See Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (recognizing a privacy right in a person's independence in making certain kinds of important personal decisions); *Gray v. Romeo,* 697 F.Supp. 580 (D.R.I.1988) (an individual's right to control medical decisions is deeply rooted in history and tradition and, therefore, included in right to privacy); *see also* Gerety, *Redefining Privacy,* 12 Harv.C.R.C.L.L.Rev. 233, 234 (1977) (defining privacy as "an autonomy or control over the intimacies of personal identity"); *cf. In re Conroy,* 98 N.J. 321, 486 A.2d 1209 (1985) (recognizing a commonlaw right to self-determination in medical decisions).

▮ And, simply because at some time such condition may be known publicly does not change the fact that, by removing from an individual the decision whether to have a blood test that would make such information known—to oneself as well as to anyone else—an unwarranted test intrudes upon that person's control over decisions concerning his or her health status.

▮ The question then becomes whether the ramifications of that loss of autonomy are serious enough so that such intrusion would be considered offensive by a reasonable person. This depends, in turn, on the nature of the specific blood test and the circumstances under which it was performed.

Importantly, then, we note that the diagnosis of HIV, the result of the unauthorized test here, carries with it a strong social stigma against the infected person. *See Borquez v. Robert C. Ozer, P.C.,* 923 P.2d 166 (Colo. App.1995) (discussing case law and other publications concerning stigma imposed by public knowledge of person's HIV status), *aff'd in part and rev'd in part,* 940 P.2d 371 (Colo.1997); *Belle Bonfils Memorial Blood Center v. District Court,* 763 P.2d 1003 (Colo. 1988) (recognizing a privacy interest in a blood donor's desire to maintain anonymity to avoid embarrassment of being identified as an AIDS carrier); *see also* Comment, *Without Probable Cause: The Constitutional Ramifications of Mandatory AIDS Testing in the Workplace,* 57 UMKC L.Rev. 863 (1989); *Doe v. City of New York,* 15 F.3d 264 (2d Cir.1994) (individual has right to privacy concerning HIV status); *Urbaniak v. Newton,* 226 Cal.App.3d 1128, 277 Cal.Rptr. 354 (1991) (HIV status is clearly a private fact).

Thus, such information is unquestionably very highly sensitive, and accordingly, there is a heightened need for an individual to hold such information in seclusion, that is, to decide whether to have a blood test performed and whether to do so anonymously. *See Norman–Bloodsaw v. Lawrence Berkeley Laboratory, supra* (highest expectations of privacy attach to those medical conditions which carry far-reaching social implications).

▮ Also, the General Assembly, by providing that a person's blood may be tested for HIV only with a person's consent, tacitly has acknowledged the existence of a significant privacy interest in one's blood, and the information so derived, by enacting legislation encouraging voluntary and confidential testing for HIV. *See* §§ 25–4–1401 & 25–4–1405(8)(a), C.R.S.1997. *See also* §§ 25–4–1402.5 & 25–4–1405.5, C.R.S.1997 (anonymous testing without requiring disclosure of identity); § 25–4–1405(6), C.R.S.1997 (allowing examination and treatment of minors with HIV without parental consent).

Furthermore, we note that these statutory provisions do *not* require testing for HIV under any of the circumstances alleged in the

complaint here. *See* § 25–4–1405(8)(a) (enumerating specific circumstances under which a person's blood may be tested for HIV without knowledge or consent). *See also Glover v. Eastern Nebraska Community Office of Retardation,* 867 F.2d 461 (8th Cir. 1989) (because AIDS not transmitted by casual contact, mandatory testing of health workers not justified by the minimal risk). Consequently, under the circumstances here, Cambridge was not required by reason of public policy to seek an HIV test of plaintiff's blood. It remained with plaintiff to choose when, and under what conditions, his blood would be so tested.

For these reasons, we conclude that an unauthorized HIV test, under the circumstances as set forth in plaintiff's complaint, would be considered by a reasonable person as highly invasive, and therefore, such is sufficient to constitute an unreasonable or offensive intrusion.

## C.

■ To summarize, plaintiff's complaint alleges that Cambridge's conduct was intentional. And, unlike in *Doe v. Dyer–Goode, supra,* plaintiff gave only limited consent to the testing of his blood and asserted his desire to hold in seclusion his blood sample and the information contained in it. Plaintiff here has alleged that he specifically asserted his desire to keep in seclusion his HIV status as revealed through his blood sample. He asserted this desire to his instructor by questioning the purpose of the blood test to which his blood sample would be subjected and, only after being assured that the blood test would be for rubella only, did plaintiff give his limited consent.

In contrast, Cambridge has asserted *no* public policy or private interest that would warrant the need to determine the HIV status of the students in its program. And, absent a need to identify persons with HIV, Cambridge, under these circumstances, had no reason to order the blood test required to obtain such information.

We conclude that this assertion—that Cambridge, by its unauthorized request to test plaintiff's blood sample for HIV, unrea-

sonably intruded upon his privacy—is sufficient to state a claim for relief based on invasion of privacy by intrusion upon seclusion.

## III.

■ Finally, we do not agree with Cambridge that § 25–4–1405(8)(b), C.R.S.1997, provides the sole remedy for an unauthorized test of a person's blood and that, therefore, plaintiff's claim is precluded.

As discussed, under § 25–4–1405(8)(a), a test for HIV may not be performed without the knowledge and consent of the person whose blood is being so tested. Section 25–4–1405(8)(b) provides that, *if* a person is tested for HIV without his or her knowledge or consent, that person is to be given prompt, personal, and confidential notice that such test was performed and given the opportunity to obtain the test results.

Although § 25–4–1409, C.R.S.1997, sets forth criminal sanctions for violations of other reporting and disclosure requirements set forth in §§ 25–4–1402 to 25–4–1404, C.R.S. 1997, the statute does not contain a penalty, civil or criminal, for testing a person's blood without consent or for failing to inform a person that such test occurred.

Further, § 25–4–1402(6), C.R.S.1997, provides that any person who complies fully and in good faith with the statute is immune from civil and criminal liability for actions taken in compliance with the provisions of the statute. And, § 25–4–1402(5), C.R.S.1997, specifically confers immunity from claims of invasion of privacy for good faith reporting or disclosure pursuant to this section or § 25–4–1403, C.R.S.1997.

By its grant of immunity in certain circumstances, the General Assembly has recognized that civil actions may occur. Further, by granting such immunity in the absence of providing a specific civil remedy, the General Assembly has not evinced any intent to preclude a person from bringing a civil action. In the absence of such, the common law provides the mechanism for enforcing a violation. Accordingly, plaintiff's claim is not precluded by the statute. *See Farmers Group, Inc. v. Williams,* 805 P.2d 419 (Colo.1991)

(plaintiff may not be deprived of common law right of action absent language in statute that directly or impliedly evidences a clear legislative intent to abrogate such right); *cf.* § 10-3-1104.7, C.R.S.1997 (limits disclosure of genetic information to protect individual privacy and autonomy).

The judgment is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

HUME, C.J., and MARQUEZ, J., concur.