**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 14 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

RENEE L. PASCOUAU,

      Plaintiff-Appellant,

v.

MARTIN MARIETTA CORPORATION, d/b/a,
Martin Marietta Aeronautics Group, a Maryland
Corporation doing business in Colorado,

      Defendant-Appellee.

No. 98-1099
(D. Colo.)
(D.Ct. No. 93-K-471)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BRORBY**, **HOLLOWAY**, and **BRISCOE**, Circuit Judges.

_____

      This case involves allegations of hostile work environment sexual

harassment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. § 2000e _et seq._ , and various common-law tort claims brought by

Appellant Ms. Renee Pascouau against her former employer, Appellee Martin

Marietta Corporation (Martin Marietta). She challenges the district court's award

_____

    [*] This order and judgment is not binding precedent except under the doctrines of
law of the case, _res judicata_ and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

of partial summary judgment dismissing her tort claims, the court's adverse decisions on her remaining Title VII claims after a bench trial, and the court's subsequent decision to award attorney's fees and costs to Martin Marietta. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm in part and reverse in part.

## I. Background

Ms. Pascouau began her employment as a word processor with Martin Marietta in November 1982. In 1988, Martin Marietta transfered her to a different position in Document Control/Defense Systems (Document Control), where she worked until March 1991. During this time in Document Control, Ms. Pascouau alleges various Martin Marietta co-workers and supervisors committed acts of sexual harassment against her that created a hostile work environment. She claims her male co-workers and supervisors frequently engaged in lewd discussions in the workplace about sex and their own sexual experiences. They also brought sexually suggestive materials into the office, including pornographic magazines and a novelty item called a "condom tree." In addition, she claims they used vulgar language and told dirty jokes in her presence, and called her nicknames like "bumper" and "bullets" – names that ostensibly refer to her breast size. She also alleges her male co-workers verbally ridiculed and belittled her,

speculated about her sexual preferences, inappropriately commented about the physical attributes of other women in her presence, and engaged in "farting contests" and other offensive behavior in the office. Ms. Pascouau contends her direct supervisors knew about and participated in some of these activities, and did nothing to prevent the alleged harassment.

In addition to this evidence of hostile work environment sexual harassment, Ms. Pascouau claims that after she complained about the situation in her workplace, Martin Marietta personnel failed to deal with the problem through investigation and discipline of the offending employees. Ms. Pascouau also alleges that her complaints to supervisors led to retaliation by other Martin Marietta employees in the form of verbal reprimands, poor work performance appraisals (*id*. at 26), offloading,[1] and demotion.

Ms. Pascouau filed suit against Martin Marietta in 1992, bringing claims under federal law and Colorado common law. Her final amended complaint included allegations of hostile work environment sexual harassment, quid pro quo sexual harassment, retaliation, and Equal Pay Act violations under Title VII, as

---

[1] "Offloading" is a term used by Martin Marietta to refer to the process of leaving a project or assignment.

well as common-law claims for breach of contract, promissory estoppel, extreme and outrageous conduct, invasion of privacy, and negligent supervision. The district court granted Martin Marietta's subsequent motion for partial summary judgment on the tort claims, finding Title VII preempted her common-law claims that were based on the same conduct. The remaining claims were heard at a bench trial. Almost three years after the trial was completed, the court issued a Memoradum Opinion and Order deciding in favor of Martin Marietta. Following its decision, the district court awarded attorneys' fees and costs to Martin Marietta as the prevailing party.

## II. Discussion

Ms. Pascouau raises numerous issues for our consideration on appeal. First, she claims the district court erred in granting partial summary judgment for Martin Marietta because Title VII does not preempt or subsume her state law remedies. Second, she urges us to reverse the trial judgment because of the district court's unusually long delay in passing judgment, and the fact that it based its decision on a review of the trial record which did not contain portions of her direct testimony. Third, she claims we should reverse because, without the missing portions of her direct testimony, she cannot present a complete record to this court for review. Fourth, she challenges the district court's apparent reliance

-4-

on a hostile work environment standard which, when assessing the severity and pervasiveness of the alleged hostile work environment, took into account her co-workers' experience and education level. Fifth, she claims the district court erred in ruling the conduct of Martin Marietta's employees did not constitute a hostile work environment. Sixth, she alleges the district court incorrectly concluded Martin Marietta did not subject her to retaliation for opposing its allegedly unlawful employment practices. Seventh, she claims the district court abused its discretion when it admitted illegally obtained evidence. Eighth, she asserts the district court should not have allowed Martin Marietta to introduce evidence of her sexual history. Finally, she contends the district court erred in awarding attorneys' fees to Martin Marietta because it did not find her testimony credible.[2] We ordinarily would begin by reviewing the district court's summary judgment rulings. However, because the district court's resolution of the Title VII issues at the bench trial has some impact on our analysis of the state tort claims, we leave our discussion of the court's partial summary judgment ruling on those state claims until the end.

---

[2] Although considered by the district court in the proceedings below, Ms. Pascouau did not raise any of the following issues on appeal: *quid pro quo* theory of sexual harassment, discriminatory failure to promote based on gender, discriminatory unequal pay based on gender, breach of contract, and promissory estoppel. Therefore, we consider these issues waived. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (failure to raise an issue in the opening brief waives the issue).

A.      Delay in Rendering Decision and Effect of the Incomplete Record

Ms. Pascouau claims we must automatically reverse the district court's decision because the court purposely and punitively delayed its decision for almost three years after the bench trial, and then decided the case by relying on a trial transcript which did not contain a portion of Ms. Pascouau's direct testimony.  We disagree.  Although the district court apparently requested the trial transcripts before issuing its final ruling, that does not  mean the court derived all of its conclusions, especially those regarding the credibility of witnesses, solely from the incomplete record.  The judge deciding this case presided over the bench trial, and presumably assessed the veracity of the witnesses and the weight of the evidence at that time.  *See Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997) ("We assume that the district court performed its review function properly in the absence of evidence to the contrary.")  Ms. Pascouau offers no evidence to the contrary.  Accordingly, we hold the district court did not err in rendering a decision without the benefit of having a portion of the transcript of Ms. Pascouau's direct testimony.

Ms. Pascouau contends the extended period of deliberation reflects the judge's desire to punish her for underestimating the time needed for trial.  The district court's order lends some credence to this claim.  However, even assuming

-6-

the court's long deliberation in this instance was punitive, Ms. Pascouau has produced no evidence showing this delay inherently prejudiced the judge's findings. Thus, while we are troubled by the length of time between trial and judgment, and encourage more efficient and speedy resolution of judicial matters whenever possible, in the absence of some showing of prejudice resulting from the delay, we find no reversible error. *See, e.g., Petrilli v. Drechsel*, 94 F.3d 325, 328-29 (7th Cir. 1996) (refusing, in the absence of any affirmative evidence of prejudice beyond the fact of a three-year delay, to order a new trial).

B.      Incomplete Record on Appeal

Focusing again on the incomplete record, Ms. Pascouau asserts we must reverse the district court's decision because, without the missing portions of her direct testimony, we cannot determine whether the district court erred in its findings and conclusions. We disagree with her assessment. Ms. Pascouau's argument ignores the clear instruction contained in Fed R. App. P. 10(c) which provides "[i]f the transcript of a hearing or trial is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." Under this rule, Ms. Pascouau could have prepared a statement reiterating her direct testimony and submitted it along with the Appellee's objections and proposed amendments to the district court for

settlement and approval. The parties then could have included the statement in the record on appeal for our review. However, Ms. Pascouau did not avail herself of this remedy or show sufficient cause for her inability or failure to do so.[3] Consequently, we proceed based on the record before us, and we decline to reverse for a new trial because of the missing testimony.

C.    Hostile Work Environment

With regard to the resolution of her Title VII claims at the bench trial, Ms. Pascouau asserts the district court erred (1) when it found her co-workers conduct did not create a hostile work environment, and (2) when, in reaching this decision, the court relied on a standard which took into account the relative education and experience level of the perpetrators. We examine these issues separately.

---

[3] Ms. Pascouau claims she could not reconstruct her missing testimony because she did not find out about the lost transcript until over two and a half years had gone by. However, we find it difficult to believe the passage of time caused her to completely forget the substance of her testimony at trial, and rendered her unable to assist her attorney in recapitulating her prior statements. In short, we do not find Ms. Pascouau's claimed loss of memory excuses her failure to utilize the remedy available under Fed. R. App. P. 10(c).

1.      Hostile Work Environment Standard

As for Ms. Pascouau's dispute over the standard the district court used to assess her hostile work environment claim, we agree that if, in fact, the district court's decision hinged solely on consideration of the experience and education of her co-workers, the court committed error. The standard applicable to hostile work environment claims is well-settled. The plaintiff must show "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted); *Penry v. Federal Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir.1998), *cert. denied*, 119 S. Ct. 1334 (1999). The court must focus on both an objective and subjective analysis of the work environment with consideration given to "all the circumstances," *Harris* 510 U.S. at 23; *Smith v. Northwest Fin. Acceptance, Inc*., 129 F.3d 1408, 1413 (10th Cir.1997), and "the social context in which particular behavior occurs and is experienced by its target." *Oncale v. Sundowner Offshore Serv. Inc*., 523 U.S. 75, ___, 118 S. Ct. 998, 1003 (1998).

The court's Memoradum Opinion and Order states in part that it found "in their totality, the speech, jokes and conduct of the employees in the Document

-9-

Unit were consistent with their level of education and experience and, as such, constituted a work environment that was not so severe and pervasive as to alter Plaintiff's conditions of employment so as to violate Title VII." Although Ms. Pascouau asserts that the court's apparent reliance on education and experience level is impermissible, we do not believe the district court erroneously rested its decision *solely* on the education and experience level of the perpetrators. Instead, a review of the court's findings shows it merely considered the education and experience of the employees in Document Control as two of the many factors affecting the social context in which the allegedly offensive behavior occurred. Moreover, Ms. Pascouau ignores the fact that in the opening paragraph of its findings of fact and again in its conclusions of law, the district court stated the proper criteria for assessing a hostile work environment – complete with citations to appropriate Supreme Court authority. Given these repeated references to accepted legal standards and the court's overall analysis, we do not believe the district court relied on any improper criteria to assess the work environment.

2.    Hostile Work Environment Findings

Ms. Pascouau also claims the district court erred in concluding the evidence did not show hostile work environment sexual harassment. Because the Title VII claims in this case already have been fully tried, we review the district

court's findings of fact only for clear error. *David v. City & County of Denver*, 101 F.3d 1344, 1359 (10th Cir. 1996), *cert. denied*, 118 S. Ct. 157 (1997); Fed.R.Civ.P. 52(a). We accept the findings of the district court unless they are without support from the record, or unless, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made. *See Hicks v. Gates Rubber Co.,* 928 F.2d 966, 971 (10th Cir. 1991). Whether this court would have made the same decision is not the issue. "We cannot reverse simply because we might have decided the case differently." *Id.*

Ms. Pascouau raises several arguments contesting the district court's findings. She initially challenges the court's reliance on the testimony of other women employees to establish that the harassment was not sufficiently severe to constitute a hostile work environment. She claims the women's testimony contradicts the court's findings, and argues the court erred when it stated that one of the female witnesses testified that Ms. Pascouau openly joked about her own breast size with other employees, when, in fact, the witness only said joking occurred in the workplace on a daily basis and she could not specifically remember Ms. Pascouau joking about her own breasts. We disagree with Ms. Pascouau's assessment and find the other women's testimony, taken as a whole, supports the district court's conclusions. The other women co-workers, whose

-11-

testimony Ms. Pascouau cites as contradicting the district court's findings, stated they did not find the Document Control working environment sexually harassing or offensive, nor did Ms. Pascouau ever express to them any complaints she had about sexual harassment. Even though the court may have mistakenly stated the substance of a portion of the testimony of one witness to support a point in its Memoradum Opinion and Order, that error alone does not merit reversal of a decision based on over a week of extensive evidence presented by the parties. *See Nulf v. International Paper Co.*, 656 F.2d 553, 561 (10th Cir.1981) (holding defects and inconsistencies in individual findings by the trial court that are so minor that they could not have been relevant to the outcome do not merit reversal).

Ms. Pascouau further claims the district court did not adequately consider the fact that all of the women in Document Control complained about the "farting contests" that occurred, and found the conduct offensive. She admits the district court correctly decided the conduct is offensive irrespective of gender, but argues the court should not have refused to consider it as some evidence of generally offensive conduct and divisive behavior along gender lines. We conclude the district court properly refused to consider the "farting contests" as evidence of a hostile work environment. Although offensive, this conduct is clearly not

harassment on the basis of gender – even when viewed in concert with other conduct Ms. Pascouau claims is sexually harassing.     *See Stahl v. Sun Microsystems, Inc*., 19 F.3d 533, 538 (10th Cir.1994) ("If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment.").

Ms. Pascouau also claims the district court improperly characterized her sexual harassment allegation as "secondary" to her equal pay and promotion complaint, and incorrectly found that she did not complain to the human resources supervisor about vulgar joking in the office.  We agree with Ms. Pascouau that whether her sexual harassment complaint was secondary to other complaints is immaterial, and the record evidence appears to support her argument that she did make some complaint about the joking occurring in Document Control.  Nevertheless, these arguments do not affect our evaluation of the district court's treatment of Ms. Pascouau's hostile work environment claim. The record shows the court thoroughly considered her sexual harassment claims and plainly acknowledged the fact that some vulgar joking occurred in the workplace, but not to a degree sufficient to create a sexually harassing hostile work environment.  In light of the court's obvious consideration of her harassment claim and the vulgar joking, its characterization of her harassment

claim as "secondary" and its failure to acknowledge that she complained about the joking to a supervisor does not render its overall hostile work environment decision infirm.

In another argument, Ms. Pascouau contends the district court made no specific findings about whether the lewd talk by the men in Document Control alone was sufficiently severe or pervasive to alter the working environment. This argument is also unavailing in light of the court's overall inquiry, which took into account "the coarse language, joking, and other inappropriate and immature behavior," in deciding her hostile work environment claim.

Ms. Pascouau also asserts the district court erred in discounting the significance of the presence of pornographic magazines in the workplace, because the evidence shows she knew about the magazines and expressed shock when she discovered them. Again, we are persuaded the district court fully considered this evidence and correctly found that, although inappropriate for the workplace, because the magazines were not openly displayed, nor were employees involuntarily subjected to viewing them, their presence did not contribute to the creation of a hostile work environment.

Finally, Ms. Pascouau faults the district court for concluding that because she may have joked with other employees about her breast size and used some vulgar language, she invited the use of sexually-suggestive nicknames, vulgar language, and derogatory remarks referring to her breast size by her male co-workers. We agree that a plaintiff's participation in some lewd joking and isolated use of vulgar language does not mean that others in the workplace may then freely engage in what would otherwise constitute sexually harassing behavior toward him or her. However, we again emphasize that the district court's analysis of hostile work environment claims does not turn exclusively on the nature of certain isolated incidents, but on the totality of the circumstances. *Harris,* 510 U.S. at 23. The factfinder must assess the "real social impact of workplace behavior," based "on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale*, 523 U.S. at ___, 118 S. Ct. at 1003. The analysis requires the exercise of "[c]ommon sense, and an appropriate sensitivity to social context ... to distinguish between simple teasing ... and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Id.* Under this standard, even though some inappropriate comments and conduct occurred, the court could still find these

acts did not create a sexually harassing hostile work environment. [4]

Having reviewed each of Ms. Pascouau's challenges, we find no meaningful instance where the district court's decision is unsupported in fact or merits reversal. The court's findings, although not comprehensive, are adequate to inform us of the factual basis for its decision, and we recognize no grounds for concluding that the court proceeded under an erroneous view of the law or failed to give Ms. Pascouau's evidence proper consideration. Although the behavior exhibited in Ms. Pascouau's workplace was plainly boorish, insensitive, and inappropriate, the district court permissibly found the conduct did not rise to the level of actionable hostile work environment sexual harassment under Title VII.

D.   Retaliation

Ms. Pascouau also claims she suffered retaliation from her department supervisor and co-workers following repeated complaints she made to Martin

---

[4] Ms. Pascouau also challenges the district court for failing to acknowledge Martin Marietta's negligent mishandling of her hostile work environment complaint, and mistakenly construing the company's offer of another position as a sufficient remedial measure. However, in light of the court's finding that Martin Marietta never subjected Ms. Pascouau to actionable hostile work environment sexual harassment, we need not reach the subsidiary issues of whether Martin Marietta negligently handled her complaint or failed to take adequate remedial steps.

Marietta personnel responsible for Equal Employment Opportunity compliance, and the district court improperly decided this claim by ignoring all of the adverse actions against her except Martin Marietta's decision to off-load her from Document Control. Again, we emphasize that when a Title VII case has been fully tried, we review the district court's ultimate finding of no retaliation for clear error. *Curtis v. Oklahoma City Pub. Schls. Bd. of Educ*., 147 F.3d 1200, 1217 (10th Cir. 1998). "If there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Id*. (internal quotation marks and citation omitted). We must give due regard to the district court's firsthand opportunity to judge the credibility of the witnesses and weigh the evidence presented. Fed. R. Civ. P. 52(a); *Ebert v. Lamar Truck Plaza*, 878 F.2d 338, 338 (10th Cir.1989).

Our review of the record establishes there was evidence supporting the court's finding of no retaliation. Martin Marietta presented evidence at trial to support its assertion that the decision to off-load Ms. Pascouau was based on the business necessity created by overall downsizing and budget cuts, not in retaliation for her complaints. The evidence also establishes that Martin Marietta made decisions about which employees to off-load based on non-discriminatory factors like job performance, unit chemistry, and work history. We find the trial

-17-

court reasonably inferred from the evidence that Martin Marietta's decision to off-load Ms. Pascouau was based on non-discriminatory motives, not in retaliation for complaining to Martin Marietta supervisors.

Although Ms. Pascouau further claims retaliation based on "all of the other patently adverse incidents leading up to the off-load, and ... demotion 'offer,'" she cites nothing in the record to substantiate her claims. In the absence of essential record references in Ms. Pascouau's opening brief, we will not address her contentions or sift through the record to find support for her arguments. *S.E.C. v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992). Consequently, we affirm the district court's ruling on Plaintiff's Title VII retaliation claim.

E.    Evidentiary Rulings

Ms. Pascouau contends the district court made two erroneous evidentiary rulings during the trial that merit reversal and remand for retrial. First, she claims the court erroneously permitted Martin Marietta to introduce prejudicial, illegally-obtained evidence from a confidential Personal Security Questionnaire. Martin Marietta sought to use the information from the questionnaire in support of an after-acquired evidence affirmative defense showing Ms. Pascouau submitted false information about her past use of illicit drugs during the process

-18-

of obtaining security clearance from the government, and therefore would not have been retained in her position in Martin Marietta's classified or restricted access program in any event. Second, Ms. Pascouau contends the trial court erroneously refused to exclude prejudicial evidence of her past sexual history.

We review the district court's decision to exclude or admit evidence under an abuse of discretion standard. *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1296 (10th Cir. 1998). The "trial court's decision will not be disturbed unless [we] [have] a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *McEwen v. City of Norman*, 926 F.2d 1539, 1553 (10th Cir. 1991) (internal quotations omitted). In bench trials "questions raised relative to the admission or exclusion of evidence ... become relatively unimportant," because the rules of evidence relating to admission and exclusion of evidence are "intended primarily for the purpose of withdrawing from the jury matter which might improperly sway the verdict." *United States v. Norman T.*, 129 F.3d 1099, 1107 (10th Cir. 1997) (quotation marks and citations omitted), *cert. denied*, 118 S. Ct. 1322 (1998). In fact, we have held that "where a cause was tried before the court without a jury, it will be presumed on appeal that ... the court considered only competent evidence and disregarded that which was incompetent." *Id.* (quotation marks and

citation omitted).

Both Ms. Pascouau's arguments pertaining to the admission of evidence are unavailing. In her first claim, the evidence she alleges the district court erroneously admitted relates to Martin Marietta's after-acquired evidence affirmative defense. Because the district court found Martin Marietta did not retaliate against Ms. Pascouau or subject her to a hostile work environment, the trial court did not need to examine the merits of Martin Marietta's affirmative defense. Likewise, our decision to affirm the district court's conclusions on appeal makes it unnecessary for us to examine affirmative defenses or the court's treatment of evidence supporting those defenses. *See Cannon Oil & Gas Well Serv., Inc. v. Evertson*, 836 F.2d 1252, 1257 (10th Cir. 1987) (ruling that in light of the jury's finding for the defendant on the merits, and the court's finding of sufficient evidence to support the findings, the issue of the trial court's handling of the affirmative defenses is moot).

As for the district court's decision to admit evidence of Ms. Pascouau's sexual history, we assume without deciding the district court erroneously allowed the introduction of evidence of her sexual history without requiring proper

compliance with Fed. R. Evid. 412. [5] Nevertheless, we find any error was harmless. "Evidence admitted in error can only be prejudicial if it can be reasonably concluded that ... without such evidence, there would have been a contrary result." *Sanjuan* 160 F.3d at 1296 (quotation marks and citations omitted). Ms. Pascouau points to no particular instances in the record where the district court admitted prejudicial sexual history testimony over her objection. An examination of the record and district court findings persuades us that excluding the evidence Ms. Pascouau challenges would not have changed the result. Indeed, the district court's findings reveal no meaningful reliance on any of the sexual history evidence Martin Marietta presented. The court's only reference to Ms. Pascouau's sexual history is a passing comment in its recapitulation of expert psychiatric testimony about the effect of her past unsuccessful intimate relationships. Accordingly, we decline to reverse on this

---

[5] Ms. Pascouau correctly notes the court may only admit evidence offered to prove the sexual behavior or predisposition of any alleged victim of sexual misconduct if its proponent satisfies the "balancing test" articulated in Fed. R. Evid. 412(b)(2). In addition, Fed. R. Evid. 412(c) requires the proponent to follow certain procedures in order to determine the admissibility of evidence proffered under the rule – including filing a written motion at least fourteen days before trial that specifically describes the evidence and states the purpose for which it is offered. Fed. R. Evid. 412(c)(1)(A). The trial court must then conduct an in camera hearing and afford the victim and parties a right to attend and voice any objections. Fed. R. Evid. 412(c)(2). In this case Martin Marietta admittedly failed to follow these procedures, yet the court still allowed the presentation of sexual history evidence.

basis.

F.     Attorneys' Fees

Ms. Pascouau asserts the district court improperly awarded attorneys' and expert witness fees to Martin Marietta as the prevailing party. *See* 42 U.S.C. § 2000e-5(k). We ordinarily review the court's decision regarding attorneys' fees for an abuse of discretion. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir.1986). In this case, however, our review is somewhat complicated by the fact the district court granted Martin Marietta's motion for attorneys' and expert witness fees, and its motion to amend the order granting the fees, without expressing reasons for its decision. We are left to presume the court agreed with and based its decision on the arguments set forth in Martin Marietta's original motion.

The Supreme Court instructs that "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n,* 434 U.S. 412, 421 (1978); *see also, Jane L. v. Bangerter*, 61 F.3d 1505, 1513 (10th Cir. 1995). Martin Marietta's

primary contention in the original motion requesting attorneys' and expert witness fees was that because the court did not find Ms. Pascouau's testimony credible, the court should consider her claim frivolous. We do not agree. A review of the record persuades us that Ms. Pascouau's lawsuit was not frivolous, unreasonable or without foundation. Although the district court ultimately rejected her claims and discredited her testimony, such findings alone do not mean her lawsuit was devoid of any legitimacy. On the contrary, the issues and evidence presented in this case called for careful consideration of several questions at trial, especially with regard to the severity and pervasiveness of the alleged sexually-harassing conduct in the workplace. Consequently, we find the court abused its discretion in awarding attorney's and expert witness fees to Martin Marietta and revrse the award. [6]

G.    Partial Summary Judgment on State Law Claims

We review de novo the district court's decision to award partial summary judgment, employing the same legal standard as the district court and construing the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *See Kaul v. Stephan*, 83 F.3d

---

[6] Having decided to reverse the district court's award of attorney's fees on other grounds, we need not reach the issue raised by Ms. Pascouau regarding the retroactive application of the expert witness fees provision of 42 U.S.C. § 2000e-5(k).

1208, 1212 (10th Cir. 1996). Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine only if a party presents facts sufficient to show that a reasonable jury could find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In its order granting partial summary judgment for Martin Marietta on Ms. Pascouau's claims of outrageous conduct, negligent supervision, and invasion of privacy, the district court ruled that the federal statutory scheme under Title VII preempted these state tort law actions. The court reasoned that because the state claims were based on the same conduct as the alleged employment discrimination, permitting Ms. Pascouau to proceed on those claims would allow her to circumvent the "administrative and remedy restrictions of Title VII."

We disagree with the district court's preemption analysis. Section 708 of Title VII, 42 U.S.C. § 2000e-7, makes it plain Title VII does not "exempt or relieve" defendants from any "liability" or "duty" of state law unless such law requires or permits "the doing of any act which would be an unlawful employment practice" under Title VII. Accordingly, the test for determining if

-24-

Title VII preempts state law is whether the state law permits employment practices that violate or contradict Title VII. *See California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 290-91 (1987). Federal law generally preempts state law only in cases where "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), or the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). *Guerra* makes it plain that Title VII does not manifest Congress' intent to "'occupy the field' of employment discrimination law," 479 U.S. at 281, especially in cases like this, where the state tort claims Ms. Pascouau made merely augment her federal claims and do not conflict with the provisions of Title VII or prevent the accomplishment of its purposes. *See Hirase-Doi v. U.S. West Communications, Inc*. 61 F.3d 777 (10th Cir. 1995) (implicitly deciding Title VII does not preempt state tort claims by considering without objection both an employee's state tort and Title VII claims against her employer). Consequently, we hold the district court should not have granted summary judgment on this basis. *See, e.g., Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48-49 (1974) ("[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.").

-25-

However, this conclusion does not end our analysis. "We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994). In this instance, then, we may look beyond the preemptive effect of Title VII and examine the sufficiency of Ms. Pascouau's state tort claims in light of relevant findings and conclusions from the bench trial. Our analysis of the state tort claims may go beyond a de novo review of the record before the district court at the time it considered the motion for summary judgment and examine the potentially dispositive effects of the district court's ultimate Title VII factual findings on the previously dismissed state claims, because the state tort actions dismissed on summary judgment rely on essentially the same conduct as the federal Title VII claims adjudicated at the subsequent trial. [7]

1. Outrageous Conduct / Intentional Infliction of Emotional Distress

Colorado law sets a high standard for outrageous conduct claims. In order to prove outrageous conduct or intentional infliction of emotional distress, the behavior must be "so *extreme* in degree, as to go beyond all possible bounds of

---

[7] Ms. Pascouau expressly admits she relies on the same evidence to support both her Title VII and state common-law claims.

-26-

decency, and ... be regarded as atrocious, and *utterly intolerable* in a civilized community." *Coors Brewing Co. v. Floyd*, 1999 WL 9769 *4 (Colo. Jan. 11, 1999) (en banc) (quotation marks and citation omitted & emphasis added). The "defendant's conduct must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 383 (10th Cir. 1988) (applying Colorado law), *cert. denied*, 489 U.S. 1080 (1989). Simply stated, "liability ... does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts § 46, cmt. d (1965).

Thus, as a threshold matter, we examine all the evidence before the district court in the light most favorable to Ms. Pascouau and determine whether any reasonable juror could find the conduct she complains of meets the high standard set forth in *Coors*. We conclude the comments made toward her and the conduct of her co-workers, although sexually explicit, immature, and rude, were not "egregious" enough for any reasonable juror to find they constitute outrageous conduct. *Coors*, 1999 WL 9769 *3. For this reason, we affirm summary judgment on Ms. Pascouau's outrageous conduct claim.

2.    Negligent Supervision

-27-

Colorado law recognizes the tort of negligent supervision, holding "[a]n employer may ... be subject to liability for negligent supervision if he knows or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm." *Moses v. Diocese of Colo.*, 863 P.2d 310, 329 (Colo. 1993) (quotation marks and citation omitted)., *cert. denied*, 511 U.S. 1137 (1994).

In support of her negligent-supervision claim, Ms. Pascouau argues that Martin Marietta has a duty under Title VII, Equal Employment Opportunity Commission rules, and its own internal policies and procedures to properly supervise its agents and investigate, remediate, and discipline instances of sexual harassment and retaliation. She contends Martin Marietta breached its duty by allowing her co-workers and various supervisors to engage in continuing acts of harassment and retaliation against her.

We find these allegations insufficient to support a negligent-supervision claim in light of the district court's findings in this case. After having the opportunity to prove her Title VII claims at trial, Ms. Pascouau was unable to establish that Martin Marietta employees sexually harassed her, subjected her to a hostile work environment, or caused her harm or injury as a result of their

conduct.  Because an element of Ms. Pascouau's negligent supervision claim –

having been subjected to an unreasonable risk of harm – was dependent on the

proof of the same conduct and injury as she alleged in support of her Title VII

claim, the failure of her Title VII claim renders her negligent supervision claim

legally deficient as well.  We therefore affirm summary judgment on this claim.

3.      Invasion of Privacy

The final pre-trial order sets out Ms. Pascouau's claims for invasion of

privacy, including:  (1) "false light" based on Martin Marietta employees' alleged

false statements about her mental stability and sexuality, and the retributive

removal of her security access and clearance in a way that falsely indicated to

others that she committed a security breach; and (2) "intrusion into seclusion"

based on the same factual allegations of sexual harassment supporting her Title

VII claims. [8]  We examine these claims in turn.

---

[8]  In a later Motion for Reconsideration – in which Ms. Pascouau requested the court's permission to amend her complaint – she attempted to bolster her invasion of privacy claim and separate it from the facts underlying her discrimination claims by asserting Martin Marietta collected and possessed inherently private information about her and other employees without their consent.  The district court denied this motion for reconsideration and the request to amend.  Thus, our consideration of those additional allegations on appeal is limited to a review of the district court's decision to deny the motion.  Although Ms. Pascouau raised the issue of the court's refusal to grant her leave to amend in her Notice of Appeal, she waived the argument by not presenting or developing it in her opening brief.  *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994).

In order for Ms. Pascouau to prevail under Colorado law for false light invasion of privacy, she must show she "was *placed before the public* in a 'false-light' and that it was done with knowledge of its falsity or in reckless disregard of the truth." *McCammon & Assoc., Inc. v. McGraw-Hill Broadcasting Co.*, 716 P.2d 490, 492 (Colo. Ct. App. 1986) (emphasis added); *see* Restatement (Second) of Torts § 652E (1977)). The element of publicity is critical to this cause of action. *See* Restatement (Second) of Torts § 652E cmt. a. Restatement (Second) of Torts § 652D cmt. a, defines publicity as making a matter public "by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."

We hold as a matter of law Ms. Pascouau's allegations and supporting evidence presented to the district court prior to summary judgment do not fulfill this essential "publicity" element of false light invasion of privacy. Even if we assume Martin Marietta employees called her sexually suggestive names, ridiculed her, and implied Ms. Pascouau posed a security risk, she made no allegation and presented no evidence to show that Martin Marietta or its agents engaged in such conduct or disseminated private information that placed her in a false light before a public audience more extensive than her relatively small circle of co-workers in Document Control. *See also Ozer v. Borquez*, 940 P.2d

371, 377 (Colo. 1997) (en banc) (publicity "requires communication to the public in general or to a large number of persons, as distinguished from one individual or a few"). Without some evidence showing the requisite publicity, her claim of false light invasion of privacy is deficient. Accordingly, we affirm summary judgment on this claim.

As for Ms. Pascouau's "intrusion into seclusion" invasion of privacy claim, Colorado law requires her to show that another person "has intentionally intruded, physically or otherwise, upon [her] seclusion or solitude," and that a reasonable person would consider such intrusion offensive. *Doe v. High-Tech Inst., Inc* ., 972 P.2d 1060, 1065 (Colo. Ct. App. 1998) (citing Restatement (Second) of Torts § 652B (1981)). In the usual case, intrusion into seclusion involves physical intrusion into a place where a plaintiff has secluded herself – such as a defendant forcing his way into the plaintiff's home. *See* Restatement (Second) of Torts § 652B cmt. b. However, intrusion into seclusion may also occur by the use of the physical senses to oversee or eavesdrop on the plaintiff's private affairs. *Id*.

In the present case, Ms. Pascouau alleges no independent facts supporting her intrusion into seclusion claim. Instead, she merely includes by reference the

conduct underlying her Title VII claims.  A review of the allegations and evidence Ms. Pascouau proffers does not show Martin Marietta and its employees pried or intruded without consent into her private life and seclusion either physically or by other means.  Even if we assume, as Ms. Pascouau argues, that her co-workers bothered her with inappropriate, prying questions about her sex life and sexual preferences, such conduct alone does not support a claim for intrusion into seclusion.  The sexually suggestive questions were only requests for information.  The tort of intrusion into seclusion requires more than a mere inquiry that reveals nothing; liability attaches only to an *unconsented* invasion through physical or other means that actually gleans private information.  *See High-Tech Inst.*, 972 P.2d at 1065 ("intrusion upon seclusion focuses on the manner in which information that a person has kept private has been obtained").  For these reasons, Ms. Pascouau fails to support an action for intrusion into seclusion invasion of privacy.  Thus, we affirm summary judgment on this claim.

III.

For the foregoing reasons, we **AFFIRM** the district court's ruling in part. We **REVERSE** and **REMAND** with directions to vacate the order awarding attorney and expert witness fees to Martin Marietta.

**Entered by the Court:**

-32-

**WADE BRORBY**
United States Circuit Judge